UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| EDDIE D. GEIGER, # 189709, | ) | C/A No. 4:12-0603-TMC-TER |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| vs | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| ANTHONY PADULA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I.    INTRODUCTION

Petitioner, Eddie D. Geiger (Petitioner/Geiger), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing pro se, filed his Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 23, 2012.  Respondent filed a Motion for Summary Judgment (Document # 24) on August 13, 2012, along with a Return and supporting Memorandum.  The undersigned issued an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response.  Petitioner filed a Response (Document # 33) in opposition to the Motion for Summary Judgment on October 15, 2012.

This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## II.     PROCEDURAL HISTORY

### A.     Indictment and Trial

Petitioner is currently confined in the Lee Correctional Institution of the S.C. Dept. of Corrections pursuant to Orders of Commitment of the Clerk of Court for Richland County. Petitioner was indicted at the April 2004 term of General Sessions by the Richland County grand jury for assault with intent to commit first degree criminal sexual conduct (ACSC) (2004-GS-40-2701), kidnapping (03-GS-40-985), and petit larceny (04-GS-40-983). Petitioner was represented on the charges by Douglas Strickler, Esquire and Lauren Mobley, Esquire. Petitioner proceeded to trial before the Honorable Clifton Newman, Circuit Court Judge, and a jury from October 10-14, 2006. At the conclusion of the trial on October 14, 2006, the jury found Petitioner guilty of assault with intent to commit first (1st) degree criminal sexual conduct (ACSC).[1] Judge Newman sentenced Petitioner to life imprisonment without parole (LWOP).[2]

### B.     Petitioner's Statement of Facts

"Around 11:00 p.m. January 30, 2003, Annie Mae Johnson invited Petitioner into her home. According [sic] she gave Petitioner some liquor to drink while they both shared some Biblical talk. Petitioner was excused to the bathroom in which he stayed for a length of time.  During the 10

---

[1]Judge Newman directed a verdict on the kidnapping charge, and the jury found Petitioner not guilty of the petit larceny charge.

[2]Petitioner had previously been convicted of Armed Robbery in 1992. At that time, Petitioner was also convicted of ABHAN, on a Criminal Sexual Conduct charge or indictment. At that time, Petitioner was also convicted of Possession of a Pistol. After Petitioner got out of prison, he was convicted of Possession of Crack Cocaine and Criminal Domestic Violence and other magistrate level offenses. (Tr. p. 586). Pursuant to S.C. Code Ann. Section 17-25-45 (two strikes/three strikes law), Petitioner was sentenced to a mandatory sentence of life without parole (LWOP) for the present crime.

minutes of time Ms. Johnson became nervous, got her gun and proceeded to the bathroom to confront the Petitioner." Petitioner's Response to Respondent's Motion for Summary Judgment p. 1.

### C.    Respondent's Statement of Facts[3]

In the early morning hours of January 31, 2003, Annie J. placed a 911 call reporting she had been sexually assaulted in her home. Annie J. lived in Richland County. The responding law enforcement officials and emergency medical technicians arrived at the above location to find the nearly seventy (70) year old woman recently battered and cut, very frightened, and with blood on her face. Geiger's driver's license was found on the coffee table, and his clothing was discovered in the bathroom. Before being sent to the hospital, Annie J. identified Geiger as her assailant.

Geiger was arrested and indicted for ACSC and other charges. At trial, Annie J. detailed the evenings events, albeit at times she was somewhat difficult to decipher, her speech slurred from an earlier stroke. She testified that Geiger was an acquaintance of her son's and had been in her house on several previous occasions.[4] Although Geiger's appearance at her home was uninvited on this particular evening, she had voluntarily allowed him inside. Annie J. averred that, at his request, she provided Geiger with a liquor drink. She did not imbibe.[5] In recounting her attack, Annie J. seemed uncertain as to the exact location and chronology of the events, however she described Geiger's

---

[3]Respondent's statement of facts is taken from the Court of Appeals published opinion, the trial transcript and the PCR transcript.

[4]One of Annie J.'s sons also testified Petitioner was a friend of his brother and had been in his mother's home numerous times. He also testified his mother has never been able to return to her home since this assault and has lived with several of her children since the assault.

[5]Her toxicology test confirmed she had not been drinking that night.

behavior and acts against her. She stated that Geiger came out of her bathroom naked, demanded she give him money, slapped her in the head repeatedly, put a gun to her head, tried to put his penis in her mouth, and attempted to force her legs apart to have sexual intercourse with her. She testified she was able to prevent him from penetrating her and that, after the physical attack ended, Geiger searched her home for money and then left.

The emergency personnel responding to Annie J.'s telephone call described the victim as being very frightened and upset and recounted that her home was in a state of disarray.[6] Annie J's fresh blood (DNA) was found on the kitchen floor and on the back door frame. Feces was also found on the kitchen floor and on Annie J's body.[7] The sexual assault nurse who treated her at the hospital, and who was qualified as an expert, opined that Annie J.'s injuries were consistent with her description of the events. The State introduced several photographs and a diagram chronicling the injuries to Annie J.'s body. DNA tests conclusively indicated the clothes found in the bathroom had been worn by Geiger. Geiger's mother lived approximately one block from the victim.

Geiger did not testify in his own defense. He called no witnesses, but limited his defense to cross-examination of the prosecution witnesses. The jury found Geiger guilty of ACSC.

### D.    The Direct Appeal

Petitioner appealed his conviction and sentence to the South Carolina Court of Appeals. Petitioner was represented in the appeal by Tara S. Taggert of the S.C. Office of Appellate Defense. In his direct appeal brief (merits brief), Petitioner raised the following issue to the Court of Appeals:

---

[6]The State also introduced photographs of the scene corroborating Annie J.'s testimony of what occurred in her home.

[7]Annie J. had defecated on herself during the assault.

"Whether the trial judge erred in failing to charge the jury with the lesser included offense of assault and battery of a high and aggravated nature?" (Final Brief of Appellant, p. 3). The State filed a responsive brief. On September 25, 2006, the Court of Appeals in a published opinion denied and dismissed Petitioner's appeal. State v.Geiger, 370 S.C. 600, 635 S.E.2d 669 (Ct. App. 2006). Petitioner did not file a Petition for Writ of Certiorari in the S.C. Supreme Court. The Remittitur was issued on October 11, 2006.

**E.     The PCR Action**

Petitioner filed an application for post-conviction relief (PCR) on February 27, 2007 (2007-CP-40-1288), asserting (1) Ineffective assistance of counsel; and (2) Violation of Due Process. Petitioner filed an amended application on June 19, 2008. Respondent made its Return on June 25, 2007. In his amended application, Petitioner alleged he was being held in custody unlawfully for the following reasons:

1.  Defense counsel was ineffective for advising the Applicant to not testify on his own behalf at trial.
2.  Defense counsel was ineffective for failing to inform the Applicant that he would receive a mandatory sentence of life without parole if found guilty.
3.  Defense counsel was ineffective for failing to renew his objection to impermissible hearsay testimony.
4.  Defense counsel was ineffective for failing to call readily available witnesses to impeach the credibility of the victim.
5.  Trial counsel was ineffective for failing to explore a possible defense of self-defense on the facts of the Applicant's case.
6.  Defense counsel was ineffective for failing to advise the Applicant that if he did not testify on his own behalf at trial that he likely would not be able to receive a charge on self-defense or the lesser-included offense of assault and battery of a high and aggravated nature.
7.  Defense counsel was ineffective for failing to highlight to the jury the fact that an oral rape protocol kit was never performed on the victim.
8.  Trial counsel was ineffective for failing to point out inconsistencies between the victim's various accounts of the incident which lead to the Applicant's arrest as readily demonstrated with documents provided by the State in the

-5-

discovery process.

App. pp. 605-06.

An evidentiary hearing was convened into the matter on June 23, 2008 at the Richland County Courthouse before the Honorable William P. Keesley, Circuit Court Judge (the PCR Court). Petitioner was present at the hearing and represented by Tara D. Shurling, Esquire. Brian T. Petrano of the S.C. Attorney General's Office represented Respondent. At the hearing, Petitioner testified on his own behalf. Petitioner's trial counsel, Douglas Strickler, Esquire, also testified. The Court had before it the records of the Richland County Clerk of Court, the transcript of the proceedings against Petitioner, and Petitioner's records from the S.C. Dept. of Corrections.

On September 5, 2008, the PCR Court issued its Order of Dismissal denying and dismissing Petitioner's PCR application with prejudice. The Order of Dismissal was filed with the Richland County Clerk of Court on September 22, 2008.

Petitioner filed a Rule 59(e) Motion to Alter or Amend Judgment.  The PCR Court denied the Motion to Alter or Amend Judgment in its Order on Reconsideration, but addressed the issues Petitioner asserted the court had not addressed in its Order of Dismissal.

**F.    The Appeal from the Denial of PCR**

Petitioner appealed from the denial of his PCR application by way of a Petition for Writ of Certiorari (merits brief). Petitioner was represented in the appeal by M. Celia Robinson of the S.C. Office of Appellate Defense. In the Petition for Writ of Certiorari, Petitioner raised the following nine (9) issues to the South Carolina Supreme Court:

> 1. Did the PCR Court err in denying relief despite trial counsel ineffectively failing to advise Petitioner as to the pros and cons of offering testimony, despite counsel's ineffectively advising petitioner not to testify, and despite trial counsel's failing to

explain to the petitioner that, without his testimony, his attempts to argue selfdefense and ABHAN would be seriously compromised?

2. Did the PCR Judge err in denying relief despite trial counsel's ineffectively failing to request a charge on the law of self-defense?

3. Did the PCR Judge err in denying relief despite trial counsel's ineffectively failing to use the Sexual Assault Report to impeach the victim's testimony?

4. Did the PCR Judge err in denying relief despite trial counsel's ineffectively failing to argue for a lesser included offense instruction on ABHAN by pointing out that the instruction was supported by the victim's own testimony?

5. Did the PCR Judge err in denying relief despite trial counsel's negligently misstating the evidence during cross-examination where trial counsel's misstatement served to rehabilitate the victim's credibility and thereby prejudiced the defense?

6. Did the PCR judge err in denying relief despite trial counsel's ineffectively failing to investigate and his failure to present testimony impeaching the victim's credibility?

7. Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel in that he failed to object or to persuasively cite authority to support his objection to the admission of the hearsay testimony of hospital workers and police officers which exceeded the limits of the exception to the rule against hearsay and which improperly corroborated and bolstered the otherwise weak and contradictory testimony of the victim?

8. Did the PCR Judge err in denying relief despite trial counsel's erroneously informing the trial judge that petitioner had received sufficient notice of the State's intent to seek life without parole and despite the trial counsel's failing to explain to petitioner that despite the State's change in the charges against him he was nevertheless still subject to a sentence of life without the possibility of parole if he proceeded to trial?

9. Did the PCR judge err in denying relief despite appellate counsel's failure to petition for rehearing in order to correct the Court of Appeals' misstatement of the evidence which was cited by the appellate court as grounds for the denial of an ABHAN charge and as the basis for the Court's decision to affirm petitioner's conviction?

Petition for Writ of Certiorari, p. 2. The State filed a Return to the Petition for Writ of Certiorari.

On August 18, 2011, the South Carolina Supreme Court denied the Petition for Writ of Certiorari.

The Remittitur was issued on September 7, 2011. This federal habeas petition followed on February

23, 2012.

## III.    GROUNDS FOR RELIEF

Petitioner asserts the following grounds for relief in his federal habeas petition:

**Ground one**: Did the lower court err in denying relief despite appellate counsel's failure to petition for rehearing in order to correct the court of appeals misstatement of the evidence which was cited by the appellate court as grounds for the denial of an ABHAN charge and as the basis for the court's decision to affirm petitioner's conviction?

> **Supporting facts**: . . .Petitioner testified that he believed that his appellate attorney should have recognized the error in the court's decision and taken steps to correct it once the opinion was issued.

**Ground two**: Did the lower court err in denying relief despite trial counsel ineffectively failing to advise petitioner as to the pros and cons of offering testimony despite counsel's failing to explain to the petitioner that, without his testimony his attempts to argue self defense and ABHAN would be seriously compromised?

> **Supporting facts**: . . .Petitioner testified that although his attorney told him the "downside of testifying" in that he said the State would bring up his prior criminal record but that counsel did not discuss with him any of the positive things for the defense that could have resulted from the defendant's testifying. ...Petitioner testified that he now with the advice of effective counsel believes that his defense would have benefitted from his offering his testimony corroborating the victim's second version of events in which she came at him...
>
> . . .Petitioner testified that his defense was further prejudiced by trial counsel's failure to stress during his closing argument before the jury the victim had changed her story "that radically on that position."

**Ground three**: Did the lower court err in denying relief despite trial counsel ineffectively failing to request a charge on the law of self-defense?

> **Supporting facts**: . . .Petitioner asserted that his defense would have benefitted from his testimony coupled with the victim's change of story indicating that she had pulled the gun on him would have supported a claim of self defense.
>
> . . .Petitioner agreed that the court of appeals had held that, because he had failed to testify there was no evidence to support his claim of self defense or

of the lesser offense of ABHAN.

**Ground four**: Did the lower court err in denying relief despite trial counsel ineffectively failing to use the sexual assault report to impeach the victims' testimony?

> **Supporting facts**: . . .Petitioner testified that his attorney did not cross examine the victim with the report in order to impeach her contrary trial testimony that he did attempt to commit oral sodomy... Petitioner testified that his trial counsel did not cross examine the victim "about the fact that the documents from the hospital did not indicate that she had reported any such conduct."

**Ground five**: Did the lower court err in denying relief despite trial counsel ineffectively failing to argue for a lesser included offense instruction on ABHAN by pointing out that the instruction was supported by the victim's own testimony?

> **Supporting facts**: . . .Petitioner testified that he could not recall that his trial counsel argued in support of the request for an ABHAN instruction that the victim's testimony "contained gross inconsistencies including the question of who pulled the weapon on whom." Petitioner testified that he believes that his attorney should have made that argument and that his case was prejudiced by the failure to support the request for an ABHAN instruction with legal citation and reference to the testimony.

**Ground six**: Did the lower court err in denying relief despite counsel negligently misstating the evidence during cross examination where trial counsel's misstatement served to rehabilitate the victims' credibility and thereby prejudiced the defense?

> **Supporting facts**: Petitioner testified that his attorney was ineffective in himself rehabilitating the victim's testimony after he impeached her. Petitioner agreed that during his cross examination, counsel had elicited from the victim that actually she got her gun and went towards the bathroom when she became frightened by a noise.
>
> . . .Petitioner pointed out that counsel had inaccurately described the victim's direct testimony and robbed his impeachment of force by rehabilitating the victim. Petitioner testified that counsel was incorrect in recalling for the jury that the victim had already admitted during her direct testimony that she was the one that got the gun when, actually during her direct testimony the victim maintained that Petitioner had come out of the bathroom naked and holding her gun.

**Ground seven**: Did the lower court err in denying relief despite trial counsel providing ineffective assistance of counsel that he failed to object or to persuasively cite authority to support his objection to the admission of the hearing testimony of hospital workers and police officers which exceeded the limits of the exception to the

rule against hearsay and which improperly corroborated and bolstered the otherwise weak and contradictory testimony of the victim?

> **Supporting facts**: . . .Petitioner argued that his trial counsel should have objected to the hearsay nature of the police officers' testimony in which they described the victim's claims about the assault. Petitioner asserted that his attorney should have objected on the grounds of hearsay and he agreed with PCR counsel that his attorney should have supported his objection with the argument that the testimony of the officers exceeded the proper limits on hearsay testimony as to the victim's statements under the <u>Munn</u> decision.

## IV.    STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. <u>Humphries v. Ozmint</u>, 397 F.3d 206, 216 (4th Cir.2005) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." <u>Id.</u> "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." <u>McHone v. Polk</u>, 392 F.3d 691, 719 (4th Cir.2004). Further,

factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## V.    PROCEDURAL BAR

### A.    Exhaustion and Procedural Bypass

The doctrines of exhaustion and procedural bypass can bar a federal habeas claim if a petitioner has not first submitted his claims for relief to the state courts. Generally, pursuant to the exhaustion doctrine[8], a habeas petitioner will be procedurally barred from bringing a federal habeas claim if the claim has not first been presented to the state's highest court with authority to decide the issue. See 28 U.S.C. § 2254[9]; Rose v. Lundy, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379

---

[8]As stated by the Supreme Court:
The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.

Rose v. Lundy, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

[9]Section 2254(b) and (c) reads as follows:
(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
  (A) the applicant has exhausted the remedies available in the courts of the State; or
  (B) (i) there is either an absence of available State corrective process; or
   (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
 (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
 (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCAR 207; Blakeley v. Rabon, 266 S.C. 68,266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C.Code Ann. § 17–27–10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See S.C.Code Ann. § 17–27–90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.

When the petition for habeas relief is filed in the federal court, a Petitioner may present only those issues which were presented to the South Carolina Supreme Court[10] through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must present the issue to the state court before requesting a writ of habeas corpus in the federal courts. See Rose, 455 U.S. at 515; Richardson v. Turner, 716 F.2d 1059 (4th Cir.1983); Patterson v. Leeke, 556 F.2d 1168 (4th Cir.1977).

---

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[10] The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review in the South Carolina Supreme Court after the petition's transfer to the South Carolina Court of Appeals. See State v. McKennedy, 348 S.C. 270, 559 S.E.2d 850, 854 (S.C.2002), citing In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases, 321 S.C. 563, 471 S.E.2d 454 (S.C.1990).

If a petitioner fails to raise a claim at the appropriate time in state court and state procedural rules bar further means of presenting the issue to the state courts, the claim is procedurally bypassed and, generally, is procedurally barred from federal habeas review. Smith v. Murray, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Federal courts have jurisdiction to consider habeas claims subject to procedural bar (through exhaustion or procedural bypass); however,

> ... the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)); see also Engle v. Isaac, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

### B.    Cause and Actual Prejudice

To have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A Petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir.1990), cert. denied, 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.1988), cert. denied, 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988). Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054, 121 S.Ct. 661, 148 L.Ed.2d 563 (2000). Additionally,

-13-

a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir.1997). Petitioner may rely on the doctrine of actual innocence to excuse default. "Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir.1996), aff'd, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir.1999). A petitioner may establish actual innocence as to his guilt. Id. Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. 152, 165–66 (1996). It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir.1995), cert. denied, 517 U.S. 1171, 116 S.Ct. 1575, 134 L.Ed.2d 673 (1996).

## VI.    ANALYSIS

### A.    Ground One

In Ground one, Petitioner asserts that his appellate counsel was ineffective for failing to petition for rehearing to correct the court of appeals' misstatement of the evidence, which the court of appeals cited as grounds for the denial of an ABHAN charge and upon which the court of appeals based its decision to affirm Petitioner's conviction.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U .S.C.A. § 2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in § 2254(d) applies and federal habeas

corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1),(2); see also Williams v. Taylor, 529 U.S. 362, 398 (2000). The PCR court directly addressed this issue.

The issue on direct appeal was whether the trial court erred in refusing to charge the jury on the lesser included offense of ABHAN. The Court of Appeals referenced that Annie J. testified at trial, without contradiction, that Petitioner "came out of the bathroom naked, put a gun to her head, hit her repeatedly on the head, forced his penis into her mouth, and tried to force her legs open to have intercourse with her." State v. Geiger, 370 S.C. 600, 611, 635 S.E.2d 669, 675 (Ct. App. 2006). The Court of Appeals concluded that the trial record contained no evidence tending to show that Petitioner may have assaulted Annie J. but did not attempt a sexual battery and, thus, the trial court did not err by refusing to charge the jury with ABHAN.

Petitioner asserts that Annie J. did not testify that he put his penis in her mouth[11] and, thus, appellate counsel erred in not correcting this factual error made by the Court of Appeals. The PCR court addressed this issue and found no prejudice to Petitioner arising out of appellate counsel's failure to correct this factual error:

_____

[11]Annie J. testified as follows:
Q:  Uh huh.  He put the gun to your head.  What was he trying to do?
A:  My penis.  He had my penis in mouth [sic].
Q:  He was trying to put his penis in your mouth?
A:  Yeah.
Tr.  136-37.

-15-

> This Court finds no prejudice regarding Applicant's allegation of ineffective assistance of appellate counsel concerning the fact that the Appellate decision makes reference to a "fact" that the Applicant forced his penis into the victim's mouth.  The victim's testimony (p. 137) is that the Applicant placed a gun to her head and tried to put his penis in her mouth.  This Court finds that the appellate decision was essentially whether an ABHAN charge should have been given to the jury.  The Appellate Court's reasoning was in no way decisively based solely on whether the Applicant forced his penis in the victim's mouth, it is that the Applicant attempted to sexually assault the victim.

App. p. 709.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In the case of  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error.  Id. at 687.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.  Id.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir.1985), reversed on other grounds, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires the petitioner to show that  "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  The Court further found that

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct ... the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

Id. at 695.

The PCR court concluded that Petitioner had failed to show prejudice with respect to appellate counsel's failure to correct a factual error in the Court of Appeals' opinion. The PCR court found that the appellate court's decision did not turn on the specific issue of whether Petitioner actually forced his penis into the victim's mouth or whether he attempted to force his penis into her mouth. Rather, the PCR court found that the issue of importance to the appellate court was that Petitioner attempted to sexually assault the victim. Therefore, the PCR court concluded that Petitioner had failed to show that, had appellate counsel attempted to correct that factual error, the opinion by the Court of Appeals would have been different. The findings made by the PCR court are entitled to deference and Petitioner has failed to point to sufficient evidence to overcome that deference. Accordingly, the PCR court's finding of a lack of prejudice resulting from appellate counsel not petitioning the Court of Appeals to correct a factual error in its opinion was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); Williams, 529 U.S. at 398. Therefore, it is recommended that Respondent's motion for summary judgment be granted with respect to Ground One.

**B.    Ground Two**

In Ground Two, Petitioner asserts that the PCR court erred in denying relief because trial

-17-

counsel was ineffective in failing to advise him as to the pros and cons of offering testimony and that, without his testimony, Petitioner's self-defense and ABHAN arguments would be seriously compromised. The PCR court addressed this issue in its Order of Dismissal with respect to self-defense.[12]

With respect to this issue, the PCR court found,

The Applicant explained that after drinking multiple shots of vodka he asked to use the restroom, while in the bathroom the Applicant testified that he smoked some crack and marijuana, and that the crack and marijuana made him paranoid and he heard a knock on the door. The Applicant testified that the victim did not partake in any vodka shots. The Applicant testified that at some point he removed one or more layers of his clothing and that when he exited the bathroom the victim was pointing a gun at him, it was out of self-defense that the Applicant "took physical action" against the victim. The Applicant testified that he had an addiction, that he does not do drugs to treat any sort of underlying medical condition, and that crack and marijuana seriously impair him. The Applicant testified that he discussed the self-defense theory with trial counsel, but that trial counsel advised him that the drug use was going to have a severely negative effect on the weight of his testimony. The Applicant testified that trial counsel never discussed the pros and cons of whether the Applicant should take the stand, but that trial counsel did advise him that if the Applicant testified his prior record would come in. . . .

Trial counsel testified that, as he advised the Applicant, if the Applicant took the stand it would be a "serious blunder" considering the drugs the Applicant did during the incident and his prior record. Counsel testified that he did not consider exploiting victim's testimony to pursue a self-defense theory because the Applicant's self-defense theory was "not viable." . . .

This Court finds that trial counsel articulated valid strategic reasons for not advising the Applicant to take the stand and pursue his "self-defense" theory. Our courts are understandably wary of second-guessing defense counsel's trial tactics.

---

[12]It does not appear that the PCR court addressed the issue of whether trial counsel was ineffective for failing to discuss with Petitioner how his testimony might have benefitted his attempt to present an ABHAN instruction to the jury. The PCR court's discussion in its Order of Dismissal is limited to self-defense. Further, it does not appear that Petitioner addressed this failure by the PCR court to address this issue in his Ruel 59(e) Motion. However, Respondent does not address this failure by the PCR Court in its Return and Memorandum. Absent a ruling by the state court, there is nothing for this court to review. Thus, it is recommended that Respondent be given twenty days from the date of the Order ruling on this Report and Recommendation to file a subsequent Motion for Summary Judgment addressing this issue.

Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992); Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005); McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). The Applicant has not shown that counsel was deficient in that choice of tactics. This Court finds the Applicant's testimony (i.e. version of events) preposterous, especially considering he testified to smoking a crack laced marijuana joint after drinking multiple shot of vodka, immediately prior to the chain of events leading to his conviction. Accordingly, this Court finds that the Applicant's version of events is non-credible, and trial counsel cannot be found ineffective for failing to advise/present non-credible testimony, i.e. the Applicant's self-defense claim.

App. pp. 703-04, 705, 708-09.

The PCR court noted Petitioner's admission that trial counsel discussed with Petitioner his testifying at trial, including that his prior record would come in if he testified. Further, the PCR court noted that trial counsel testified that he told Petitioner his drug use just prior to the events at issue would have a severely negative effect on the weight of his testimony. The PCR court found trial counsel's testimony to be credible and Petitioner's testimony not credible. Further, the PCR court noted that trial counsel made a valid strategic decision not to pursue a claim of self-defense because such a claim was not viable. The PCR court also found that Petitioner's version of events was preposterous. These findings are entitled to deference and Petitioner has failed to show that these findings were unreasonable. Based upon these findings of fact, the PCR court concluded that Petitioner had failed to show trial counsel was ineffective with respect to his advice to Petitioner about testifying at trial.[13]

Courts are instructed not to second guess an attorney's trial strategy and tactics. Stamper v.

---

[13]Whether Petitioner was coerced into not testifying is not before the court. However, it is noted that the trial court examined Petitioner on this issue and Petitioner testified that he had fully discussed whether to testify with his trial counsel, that he needed no further time to discuss the issue and he did not want to testify. App. pp. 470-73.

Muncie, 844 F.2d 170 (4th Cir.1991); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977).   Counsel cannot be judged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Darden v.Wainwright, 477 U.S. 168, 169, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).  The PCR court found that the decision not to present a self-defense claim was sound trial strategy and that such a defense was not viable.  Thus, it follows that trial counsel's failure to not further explain a strategy he was not pursuing was not error.

For these reasons, the PCR court's rejection of Petitioner's ineffective assistance of counsel ground for failure to advise as to the pros and cons of testifying at trial was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); Williams, 529 U.S. at 398. Therefore, it is recommended that Respondent's motion for summary judgment be granted with respect to Ground Two.

### C.     Ground Three

In Ground Three, Petitioner asserts that the PCR court erred in denying relief because trial counsel was ineffective for failing to request a charge on self-defense.  Although the PCR court did not directly address this issue in its Order of Dismissal, Petitioner filed a Rule 59(e) Motion following the Order of Dismissal, in which he argued, in part, that the PCR court failed to address his argument that trial counsel was ineffective for failure to argue self-defense based upon the facts of the case.  App. p. 715.  In its Order of Reconsideration, the PCR denied the request to alter or amend the decision but addressed the issues Petitioner asserted the PCR court failed to address in

its Order of Dismissal.  With respect to Petitioner's argument that trial counsel was ineffective for

not arguing self-defense, the PCR court noted,

> The Applicant challenges the court's failure to address whether trial counsel
> was deficient for failing to argue self-defense, acknowledging that the initial Order
> did address certain aspects of the self-defense issue.  In that Order, not only did the
> court refer to the matters that the Applicant acknowledges were covered, the court
> also stated that trial counsel testified at the PCR hearing that the self-defense theory
> was "not viable."  It is clear throughout the PCR Order that the victim's testimony
> was admittedly difficult to follow and had inconsistencies.  Trial counsel testified
> that while the cold record appears that way, the live testimony was much clearer to
> understand and he had to make strategic decisions about attacking inconsistencies.
> It is the Applicant's position that the trial attorney should have argued self-defense
> because the victim testified at trial that she was in the restroom and got a gun to
> investigate.  The court finds that trial counsel testified credibly that there was no
> viable self-defense claim; he made strategic decisions which were reasonable; and,
> there is no proof that his performance in this regard was deficient or prejudiced the
> Applicant.

Order on Reconsideration, App. pp. 720-721.

As stated above, counsel cannot be judged ineffective for performing in a particular way in

a case, as long as the approach taken "might be considered sound trial strategy."  <u>Darden</u>, 477 U.S.

at 169.  The PCR court found that trial counsel's strategic decisions of not pursuing a claim of self-

defense and not attacking the credibility of the victim were reasonable.  That finding  was not

contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; nor did it result in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  <u>See</u> 28 U.S.C. § 2254(d)(1) and (2). Accordingly, it is recommended that Respondent's

motion for summary judgment be granted with respect to Ground Three.

### D.    Ground Four

In Ground Four, Petitioner asserts that the PCR court erred in denying relief because trial

counsel ineffectively failed to use the sexual assault report to impeach the victim's testimony. The PCR court never specifically ruled upon this issue and Petitioner failed to include it in his Rule 59(e), Motion to Alter or Amend in order to receive a specific ruling on such a claim. Thus, Ground Four is barred for Petitioner's failure to raise it in the state court. Petitioner has not demonstrated cause and prejudice for his procedural default of this claim. Accordingly, it is recommended that Ground Four be dismissed as procedurally barred.

### E. Ground Five

In Ground five, Petitioner asserts that the PCR court erred in denying relief because trial counsel ineffectively failed to argue for a lesser included offense instruction on ABHAN by pointing out that the instruction was supported by the victim's own testimony. In support of this ground, Petitioner asserts:

> Petitioner testified . . . [see what my attorneys did was when they asked–all they did was show the judge that ABHAN could be used as a lesser included offense–could be a lesser included offense, though they didn't put any case law up that would support me having that charge as a jury–jury charge.] (App. pp. 655-656).
> Petitioner testified that he could not recall that his trial counsel argued in support of the request for an ABHAN instruction that the victim's testimony "contained gross inconsistencies including the question of who pulled the gun on whom." (App. p. 146, 656).
> Petitioner testified that he believes his attorney should have made that argument and that his case was prejudiced by the failure to support the request for an ABHAN instruction with legal citation and reference to the testimony. App. pp. 656-57. Trial counsel testified right. I knew ABHAN wasn't going to be charged. (App. p. 686, line 2).
> Trial counsel agreed with PCR counsel that he knew ABHAN wasn't even an option. (App. p. 686, lines 3-4).

Petition p. 20.

> With respect to the ABHAN charge, the PCR court found, in its Order of Dismissal,
>
> The Applicant testified that trial counsel should have better developed the facts for

an ABHAN charge. . . .  Trial counsel testified that at the charge conference he argued "everything that occurred to him" requesting an ABHAN charge. . . . This Court finds the Applicant's testimony to be contradictory.  In one claim he alleges that trial counsel did not seek Applicant's permission to use the "yes there was an assault, but it was not sexual" language, while the Applicant also claims that trial counsel was ineffective for failing to better present the facts to support an ABHAN charge [trial counsel did attempt to get an ABHAN charge, pp. 481, 497-498, 577]. This Court finds the Applicant's testimony and/or claims to be non-credible, self-serving and inconsistent regarding whether trial counsel was ineffective in asserting an ABHAN version of events.  The allegations are wholly without merit.

App. pp. 704-05, 706, 707.

The PCR court noted that, with an ineffective assistance of counsel claim, the applicant has the burden of proving the allegations in the application and the applicant must overcome the presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment to receive relief.  App. p. 706 (citing Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985); Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989)).  The PCR concluded that Petitioner had failed to meet his burden and overcome the presumption of adequate assistance by presenting testimony that was contradictory, non-credible, and self-serving. Petitioner has failed to show that this decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); Williams, 529 U.S. at 398. Therefore, it is recommended that Respondent's motion for summary judgment be granted with respect to Ground Five.

## F.    Ground Six

In Ground Six, Petitioner asserts that the PCR court erred in denying relief because trial

counsel "negligently" misstated the evidence during cross-examination, which served to rehabilitate

the victim's credibility and prejudiced the defense.  In support of this ground, Petitioner states,

> Petitioner testified that his attorney was ineffective in himself rehabilitating the victim testimony after he impeached her.
>
> The victim testified on direct that Petitioner emerged from her bathroom naked and that he was pointing her gun at her.
>
> Petitioner agreed that during his cross-examination, counsel had elicited from the victim that actually she got her gun and went towards the bathroom when she became frightened by a noise.
>
> The record reflects further on in his examination, trial counsel asked the victim "I believe your testimony on direct was after you got your gun went to the bathroom, that the next event took place in your room?  App. p. 147, lines 7-9.
>
> Petitioner pointed out that counsel had inaccurately described the victim's direct testimony and robbed his impeachment of force by rehabilitating the victim.
>
> Petitioner testified that counsel was incorrect in recalling for the jury that the victim had already admitted during her direct testimony that she was the one that got the gun, when actually during her direct testimony the victim maintained that Petitioner had come out of the bathroom naked and holding her gun.  App. p. 669-670, lines 1-7.

Petition pp. 20-21.

With respect to cross-examination of the victim, the Order of Dismissal provides:

> The Applicant testified the inconsistencies of the victim's testimony regarding who had the gun were revealed during cross-examination. . . . Trial counsel testified that the victim was difficult to get testimony from.  Trial counsel testified that reading the cold record of the transcript makes the victim's testimony much more difficult to follow, that at the trial, victim's testimony was much clearer. . . . Trial counsel testified that there was a strategic reason for not clearing up the victim's testimony, for example on page 137 [when the victim mentions the Applicant's penis and her mouth] the victim's testimony is not clear, it is hard to follow/disjointed and that if trial counsel attempted to clear up her testimony it would be advantageous to the State's case. . . .
>
> This court finds Applicant's testimony is not credible, while also finding Applicant's counsel's testimony is credible.  Accordingly, this Court finds Applicant has failed to prove the first prong of the Strickland test–that counsel failed to render reasonably effective assistance under prevailing professional norms.  This Court also finds Applicant has failed to prove the second prong of Strickland–that he was prejudiced by counsel's performance.

App. pp. 704, 705-06, 707.

The PCR court found credible trial counsel's testimony that he made a strategic decision with respect to cross-examination of the victim.  As stated above, courts are instructed not to second guess an attorney's trial strategy and tactics.  Stamper v. Muncie, 844 F.2d 170 (4th Cir.1991); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977).  Here, Plaintiff has failed to show that the PCR court's conclusion that trial counsel was not ineffective with respect to his cross-examination of the witness was contrary to, or that it involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d)(1) and (2).  Therefore, summary judgment is appropriate as to Ground Six.

G.    **Ground Seven**

In Ground Seven, Petitioner asserts that the PCR court erred in denying relief because trial counsel was ineffective for failing "to object or to persuasively cite authority to support his objections to the admission of the testimony of hospital workers and police officers which exceeded the limits of the exception to the rule against hearsay and which improperly corroborated and bolstered the otherwise weak and contradictory testimony of the victim."  Petition p. 22.

The PCR court addressed this issue in its Order of Dismissal and in its Order on Reconsideration.  In the Order of Dismissal, the PCR court noted that Petitioner testified that trial counsel should have renewed his hearsay objection regarding the forensic investigator's testimony to what the victim stated in the medical records.  App. p. 704.  The PCR court found that Petitioner's claims that trial counsel was ineffective for failing to object to the use of the victim's statements

-25-

made during her medical exam were without merit. The PCR court noted that the record reflected "numerous, lengthy, and comprehensive objections by trial counsel concerning this issue." App. p. 708 (citing Trial transcript p. 188-198). The PCR court further found that Petitioner had failed to allege any specific objection trial counsel failed to make. Id.

In his Rule 59(e) Motion, Petitioner recognized that the Order of Dismissal addressed the hospital employees' testimony, but he argued that the court failed to address the police officers' testimony. App. p. 715. In the Order on Reconsideration, the PCR court found that the trial attorney made strenuous objections to the admission of corroborative testimony. App. p. 721. The PCR court further found that, even if there was an occasion where trial counsel did not object to something the police officers said, under such circumstances that the objection would have been sustained, the evidence against the Petitioner was overwhelming and he has completely failed to prove that he was prejudiced by any alleged failure to object to any portion of a police officer's testimony. Id.

The PCR court found no error in counsel's performance. It found the objection would have been sustained if made. This finding is subject to deference and Petitioner fails to show otherwise. Thus, Petitioner fails to show error or prejudice under Strickland. The PCR court's finding that the evidence against Petitioner was so overwhelming that he failed to show that he was prejudiced by any failure by trial counsel to object to the testimony of the police officers is entitled to deference. Petitioner has failed to show that but for the testimony of the police officers, the outcome of his trial would have been different. Therefore, the finding made by the PCR court that trial counsel was not ineffective with respect to the objections made or not made regarding corroborative testimony were not contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; nor did they result in a decision that was

-26-

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d)(1) and (2).  Accordingly, it is recommended that summary judgment be granted as to Ground Seven.

## VII.    CONCLUSION

Based on the foregoing, it is recommended that Respondent's Motion for Summary Judgment (Document # 24) be denied in part and granted in part.  Specifically, it is recommended that summary judgment be denied as to the portion of Ground Two dealing with trial counsel's failure to discuss any benefits Petitioner's trial testimony may have on his attempt to receive an ABHAN charge and that Respondent be given twenty days from the date of the Order ruling on this Report and Recommendation to address those issues in accordance with this Report and Recommendation. It is recommended that summary judgment be granted as to all other grounds.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 1, 2013
Florence, South Carolina

**The parties are directed to the important notice on the following page.**