IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Eddie D. Geiger,           )<br>                            )<br>            Petitioner, )<br>                            )<br>v.                         )<br>                            )<br>                            )<br>Anthony Padula,           )<br>                            )<br>            Respondent.    )<br>_____ ) | C/A No. 4:12-603-TMC<br><br>**OPINION & ORDER** |

Petitioner Eddie D. Geiger ("Petitioner"), a state prisoner proceeding *pro se*, filed this habeas petition pursuant to 28 § U.S.C. 2254 on March 2, 2012. On August 13, 2012, Respondent Anthony Padula ("Respondent") filed a Motion for Summary Judgement. Petitioner filed a response opposing the motion. The Magistrate Judge filed a Report and Recommendation ("Report") on February 1, 2013, recommending that the Respondent's Summary Judgment Motion be denied in part and granted in part.[1] (Dkt. # 38). Petitioner filed objections to the Report and Recommendation on February 20, 2013. (Dkt. # 40). For the reasons set forth below, the court overrules the Petitioner's objections, adopts the Magistrate Judge's Report, as modified, and grants Respondent Summary Judgment Motion.

The Magistrate Judge makes only a recommendation to this court which has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objections are made, and the court may accept, reject, or modify, in

---

[1]The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 for the District of South Carolina.

whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

## Applicable Law

Because Petitioner filed his petition in this court after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1) governs the review of his claims. Habeas relief is available only when a state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). *Burch v. Corcoran*, 273 F.3d 577, 583 (4th Cir. 2001).

The Supreme Court has explained that a State court adjudication is contrary to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An unreasonable application is different from an incorrect application of federal law. This court may not grant habeas relief even if it concludes in its own independent review that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. *Id*.

"When assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." *Wilson v. Ozmint*, 352 F.3d 847, 855 (4th Cir. 2003). The standard of review to be applied is highly deferential to the rulings of the state courts and state-court decisions are to be given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). A state court's factual determination is

presumed correct, unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).

## Discussion

In his objections, Petitioner specifically states that he has no objections to the procedural background and history set forth in the Report. (Pet'r's Obj. at 2). Accordingly, the court adopts these parts of the Report. For ease of reference, the court will set out the applicable facts here.

> In the early morning hours of January 31, 2003, Annie J. placed a 911 call reporting she had been sexually assaulted in her home. The responding law enforcement officials and emergency medical technicians arrived at the abode to find the nearly seventy-year-old woman recently battered and cut, very frightened and with blood on her face. Geiger's driver's license was found on the coffee table and his clothing was discovered in the bathroom. Before being sent to the hospital, Annie J. identified Geiger as her assailant.
>
> Geiger was arrested and indicted for ACSC. At trial, Annie J. detailed the evening's events, albeit at times she was somewhat difficult to decipher, her speech slurred from an earlier stroke. She testified that Geiger was an acquaintance of her son's and had been in her house on several previous occasions. Although Geiger's appearance at her home was uninvited on this particular evening, she had voluntarily allowed him inside. Annie J. averred that, at his request, she provided Geiger with a liquor drink. She did not imbibe. In recounting her attack, Annie J. said after excusing himself to the bathroom, Geiger returned naked and brandishing her pistol. Although at times in her testimony, Annie J. seemed uncertain as to the exact location and chronology of the events, she unequivocally described Geiger's behavior and acts against her. She stated that Geiger demanded she give him money, slapped her in the head repeatedly, put the gun to her head, put his penis in her mouth, and attempted to force her legs apart to have sexual intercourse with her. She asseverated she was able to prevent him from penetrating her and that, after the physical attack ended, Geiger searched her home for money and then left.
>
> The emergency personnel responding to Annie J.'s telephone call described the victim as being very frightened and upset and recounted that her home was in a state of disarray. The sexual assault nurse who treated her at the hospital opined that Annie J.'s injuries were consistent with her description of the events. DNA tests conclusively indicated the clothes found in the bathroom had been worn by Geiger.

*State v. Geiger*, 635 S.E.2d 669, 671 (S.C. Ct. App. 2006).

Petitioner's rendition of the underlying facts differs. He contends that the victim invited him into her home and gave him "some liquor to drink while they both shared some Biblical talk." (Pet'r's Mem. Opp. Summ. J. Mot. at 1). He further states that he went to the bathroom and, during the ten minutes he was in the bathroom, the victim "became nervous, got her gun and proceeded to the bathroom to confront [him]." *Id*. Prior to trial, Petitioner declared he wanted to pursue an alibi defense and, then during and after trial, Petitioner has claimed he acted in self-defense.

In April 2004, Petitioner was indicted for assault with intent to commit first degree criminal sexual conduct ("CSC"), kidnaping, and petit larceny. Petitioner was tried before a jury October 10-14, 2006.

> Geiger did not testify in his own defense. He called no witnesses, but limited his defense to cross-examination of the prosecution's witnesses.
>
> At the close of the evidence, Geiger's attorney requested a charge of ABHAN. The circuit court refused the inclusion of the lesser charge, stating the record was devoid of evidence that Geiger committed ABHAN rather than ACSC. The jury found Geiger guilty of ACSC.

*Geiger*, 671 S.E.2d 671. The trial judge granted Petitioner a directed a verdict on the kidnaping charge, and the jury found Petitioner not guilty of the petit larceny charge. Petitioner was sentenced to a life sentence without the possibility of parole.

Petitioner filed a direct appeal raising the following issue: "Whether the trial judge erred in failing to charge the jury with the lesser included offense of assault and battery of a high and aggravated nature?" On September 25, 2006, the Court of Appeals affirmed Petitioner conviction and sentence. *Geiger*, 635 S.E.2d 669. Petitioner then filed an application for post-conviction relief ("PCR"), raising the following two grounds for relief: 1) Ineffective assistance of counsel; and 2) Violation of Due Process.

4

Petitioner later amended his application to raise the following rounds for relief:

> 1. Defense counsel was ineffective for advising the Applicant to not testify on his own behalf at trial.
>
> 2. Defense counsel was ineffective for failing to inform the Applicant that he would receive a mandatory sentence of life without parole if found guilty.
>
> 3. Defense counsel was ineffective for failing to renew his objection to impermissible hearsay testimony.
>
> 4. Defense counsel was ineffective for failing to call readily available witnesses to impeach the credibility of the victim.
>
> 5. Trial counsel was ineffective for failing to explore a possible defense of self defense on the facts of the Applicant's case.
>
> 6. Defense counsel was ineffective for failing to advise the Applicant that if he did not testify on his own behalf at trial that he likely would not be able to receive a charge on self-defense or the lesser-included offense of assault and battery of a high and aggravated nature.
>
> 7. Defense counsel was ineffective for failing to highlight to the jury the fact that an oral rape protocol kit was never performed on the victim.
>
> 8. Trial counsel was ineffective for failing to point out inconsistencies between the victim's various accounts of the incident which lead to the Applicant's arrest as readily demonstrated with documents provided by the State in the discovery process.

(App. at 605-06). Following an evidentiary hearing, the Honorable William P. Keesley ("PCR court"), on September 5, 2008, denied Petitioner's PCR. (App. at 701-711). Petitioner then filed a Rule 59(e) Motion to Alter or Amend Judgment, which the PCR court denied. (App. at 719-22).

Petitioner timely appealed the denial of his PCR application raising the following issues:

> 1. Did the PCR Court err in denying relief despite trial counsel ineffectively failing to advise Petitioner as to the pros and cons of offering testimony, despite counsel's ineffectively advising petitioner not to testify, and despite trial counsel's failing to explain to the petitioner that, without his testimony, his attempts to argue self defense and ABHAN would be seriously compromised?

5

2. Did the PCR Judge err in denying relief despite trial counsel's ineffectively failing to request a charge on the law of self-defense?

3. Did the PCR Judge err in denying relief despite trial counsel's ineffectively failing to use the Sexual Assault Report to impeach the victim's testimony?

4. Did the PCR Judge err in denying relief despite trial counsel's ineffectively failing to argue for a lesser included offense instruction on ABHAN by pointing out that the instruction was supported by the victim's own testimony?

5. Did the PCR Judge err in denying relief despite trial counsel's negligently misstating the evidence during cross-examination where trial counsel's misstatement served to rehabilitate the victim's credibility and thereby prejudiced the defense?

6. Did the PCR judge err in denying relief despite trial counsel's ineffectively failing to investigate and his failure to present testimony impeaching the victim's credibility?

7. Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel in that he failed to object or to persuasively cite authority to support his objection to the admission of the hearsay testimony of hospital workers and police officers which exceeded the limits of the exception to the rule against hearsay and which improperly corroborated and bolstered the otherwise weak and contradictory testimony of the victim?

8. Did the PCR Judge err in denying relief despite trial counsel's erroneously informing the trial judge that petitioner had received sufficient notice of the State's intent to seek life without parole and despite the trial counsel's failing to explain to petitioner that despite the State's change in the charges against him he was nevertheless still subject to a sentence of life without the possibility of parole if he proceeded to trial?

9. Did the PCR judge err in denying relief despite appellate counsel's failure to petition for rehearing in order to correct the Court of Appeals' misstatement of the evidence which was cited by the appellate court as grounds for the denial of an ABHAN charge and as the basis for the Court's decision to affirm petitioner's conviction?

(Return Attach. # 11 - Petition for Writ of Certiorari at 3). On August 18, 2011, the South Carolina Supreme Court denied the Petition for Writ of Certiorari. Petitioner then filed this habeas petition raising seven grounds for relief. (Pet.).

In his report, the Magistrate Judge recommends the dismissal of all seven

6

grounds. In a footnote, however, the Magistrate Judge noted that it appeared that the PCR court did not address the issue of whether trial counsel was ineffective for failing to discuss with Petitioner how his testimony might have benefitted his attempt to present an ABHAN instruction to the jury. (Report at 18 n.12). The Magistrate Judge noted that it also appeared that Petitioner did not raise this failure by the PCR court in his Rule 59(e) Motion. *Id.* The Magistrate Judge stated Respondent had not addressed this failure by the PCR Court in its Return and Memorandum and that "[a]bsent a ruling by the state court, there is nothing for this court to review." *Id.* The Magistrate Judge then recommended that Respondent be given time to file a subsequent Motion for Summary Judgment to address this issue. *Id.*

In his objections, Petitioner specifically states he has no objections to the Magistrate Judge's recommendation regarding six of the grounds, and objects only to the Magistrate Judge's recommendation regarding his third ground of relief:

> **Ground Three**: Did the lower court err in denying relief despite trial counsel ineffectively failing to request a charge on the law of self-defense?
>
> **Supporting Facts**: . . . Petitioner asserted that his defense would have benefitted from his testimony coupled with the victim's change of story indicating that she had pulled the gun on him would have supported a claim of self defense. . . .Petitioner agreed that the court of appeals had held that, because he had failed to testify there was no evidence to support his claim of self defense or of the lesser offense of ABHAN.

(Pet. at 14). Respondent did not file any objections.

The PCR Court's held trial counsel had made a strategic decision not to pursue a claim of self-defense and the Magistrate Judge found this determination was not contrary to, nor an unreasonable application of, clearly established federal law and it also did not result in a decision based upon an unreasonable determination of the facts. (Report at 21). Petitioner contends that at the PCR hearing, trial counsel merely testified that it was a strategic decision only to advise Petitioner not to testify. He

7

contends trial counsel was ineffective for failing to request a self-defense jury instruction based upon testimony other than from Petitioner. (Objections at 4). He argues that trial counsel never testified that he made a strategic decision regarding whether to request a self-defense jury instruction. (Objections at 4, 6). He cites to the following potions of trial counsel's testimony at the PCR hearing:

> Q: Did you consider the possibility of pointing out this passage of testimony to the judge as a basis for a request for a charge on self-defense even without testimony from [Petitioner]?
>
> A: I don't know what the transcript says as afar as that. I don't know whether we can even request self-defense in this situation.
>
> Q: Well, if self-defense was not requested, and to the best of my recollection, it was not, my question is whether you considered [the Victim's] admission that she was the one that got the gun and interjected the gun into the situation before any physical contact between the parties? Did you consider asserting that testimony all by itself as a basis for a request for a self-defense instruction?
>
> A: Well, if I didn't request self-defense, then I didn't consider using that testimony to support such a request.

(App. 680-681).

In South Carolina, a self-defense charge is not required unless it is supported by the evidence. *State v. Goodson*, 440 S.E.2d 370 (S.C. 1994). To establish self-defense, four elements must be present:

> (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, the defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger.

*State v. Light*, 664 S.E.2d 465, 469 (S.C. 2008).

As noted above, the trial court granted Petitioner a directed verdict on the kidnaping charge and the only charges submitted to the jury were ACSC and petit larceny. The trial court denied Petitioner's request to give the jury a instruction on the lesser included offense of ABHAN. And the South Carolina Court of Appeals affirmed holding that the facts did not support a jury charge for the lesser included offense of ABHAN. Clearly, Petitioner does not contend that he acted in self-defense in committing an ACSC. He denies an ACSC occurred. His self-defense argument would apply only to an ABHAN charge, a charge which based upon the evidence he was not entitled to receive. The court cannot fault trial counsel for failing to consider a request for self-defense when it was inapplicable to the charges submitted to the jury.

Moreover, the court notes that the evidence would not support a self-defense charge. Even assuming a self-defense charge was somehow applicable and further assuming that the Victim was armed when Petitioner came out of the bathroom, there was no evidence that Petitioner was, or believed, he was in actual imminent danger of losing his life or sustaining serious bodily injury or that Petitioner had no other probable means of avoiding the danger.

The Court agrees with the Magistrate Judge's finding that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual finding.

As to Ground Two, the Magistrate Judge recommends that the Respondent be given twenty days to file a subsequent summary judgment motion to address whether trial counsel was ineffective for failing to discuss with Petitioner how his testimony may have benefitted his attempt to obtain an ABHAN jury instruction. (Report at 18 n.12). Respondent has not filed any objection to this recommendation.

To obtain federal habeas relief under § 2254, all available state remedies must first be exhausted. 28 U.S.C. § 2254(b). State remedies are deemed exhausted when "they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)(*citing Gray v. Netherland*, 518 U.S. 152, 161 (1996)). Here, Petitioner has exhausted all of his state court remedies because no state remedies are left available to him. Petitioner filed his one direct appeal to the South Carolina Court of Appeals. Further, any future PCR application would be barred as successive and would also be untimely. Thus, Petitioner's state court remedies are technically exhausted.

Procedural default is a separate but related doctrine that may act to bar Petitioner's claim under Ground Two. As the Magistrate Judge noted, the issue raised in Ground Two was not addressed by the PCR Court in its Order of Dismissal, and Petitioner did not raise this ground in his Rule 59 Motion. Therefore, this issue could not have been raised on appeal to the South Carolina appellate court's from the denial of PCR. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007)(failure to file Rule 59 Motion to have unaddressed issue addressed in the Order of Dismissal, results in waiver of issue on appeal from PCR).

Of course, a procedural default may be excused by showing cause for noncompliance with the state rule and actual prejudice resulting from the alleged constitutional violation. *Murray v. Carrier*, 477 U.S. 478, 533 (1986). If a petitioner cannot show cause and prejudice, a federal court will refuse to hear the claim. *Id.* at 496. It is a petitioner's burden to raise cause and prejudice or making a showing of a fundamental miscarriage of justice. *Kornahrens v. Evatt*, 66 F.3d 1350, 1363 (4th Cir.1995). If such a showing is not made, the Court need not consider the defaulted claim. *Id.* Further, in the alternative to showing cause and prejudice, a petitioner must

10

demonstrate a miscarriage of justice, e.g., actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

This particular issue has not been fully vetted at this time. Accordingly, Respondent shall file a subsequent summary judgment motion addressing only this issue.

## Conclusion

After a thorough review of the Report and Recommendation and the record in this case, the court adopts, as modified, the Magistrate Judge's Report and Recommendation (Dkt. # 38). It is therefore **ORDERED** that Respondent's Summary Judgement Motion is **GRANTED**. Respondent shall have twenty days to file a subsequent motion for summary judgment addressing Ground Two.

It is further ordered that a certificate of appealability is denied because the Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[2]

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
March 6, 2013

---

[2]A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003); *Rose v. Lee,* 252 F.3d 676, 683 (4th Cir. 2001).